Case 4:21-cv-02780   Document 38   Filed on 01/03/22 in TXSD   Page 1 of 13

United States District Court
Southern District of Texas
**ENTERED**
January 03, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DAVID TERRY MOORE<br>TDCJ # 01165885,<br><br>Plaintiff,<br><br>VS.<br><br>OWEN MURRAY, *et al.*,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§  CIVIL ACTION NO. 4:21-2780<br>§<br>§<br>§<br>§<br>§ |

### MEMORANDUM OPINION AND ORDER

Plaintiff David Terry Moore, an inmate in the Texas Department of Criminal Justice–Correctional Institutions Division (TDCJ), filed a civil-rights complaint (Dkt. 1) on August 6, 2021, complaining that officials violated his constitutional right to adequate medical care. Moore proceeds *pro se* and seeks leave to proceed *in forma pauperis*. Because he has previously accumulated three strikes, Moore is ineligible to proceed *in forma pauperis* without a showing that he is under imminent danger of serious physical injury. *See* 28 U.S.C. § 1915(g). Having reviewed the pleadings, the plaintiff's litigation history, and all matters of record, the Court **DISMISSES** this case under 28 U.S.C. § 1915(g) and 28 U.S.C. § 1915A for the reasons explained below.

### I.  BACKGROUND

Moore's complaint alleges that officials did not provide him with adequate medical care, specifically, a "hard collar" neck brace in the aftermath of a bus accident in February 2020. He brings his claims against seven defendants: Owen Murray, president of Hospital Galveston at UTMB; Arnel Chan, a medical provider at the Estelle Unit;

Catherine Nwankwo, a medical provider at the Estelle Unit; Bobby Lumpkin, the executive director of TDCJ; Lannette Linthicum, health services director for TDCJ; Jeffery Richardson, warden of the Estelle Unit; and Terry Burson, an assistant warden at the Estelle Unit (Dkt. 1 at 3, 6). On November 5, 2021, as instructed by the Court, Moore filed a more definite statement of his claims and his allegations of imminent danger (Dkt. 30). The Court now sets out the relevant facts as pleaded by Moore.

Moore was in a motorcycle accident on April 15, 1991, and started using a neck brace in September 1991 (Dkt. 30, at 1-2). On February 26, 2020, while incarcerated in TDCJ, Moore was in a bus accident and suffered injuries. He claims that he needs a neck brace for several reasons: because of the 1991 accident, because of a compressed spinal cord that is reflected in medical testing and records from 2018 and 2019, and because of injuries from the 2020 bus accident (*id*. at 1, 4-5).

On May 9, 2020, several months after the bus accident, Moore was transferred to the Estelle Unit, where multiple Defendants were located (*id*. at 1). In October 2020, Moore's hard collar brace was stolen from him (Dkt. 1, at 4). On December 29, 2020, Moore received an MRI related to his neck pain from his February 2020 accident (Dkt. 30, at 4).

On August 4, 2021, Moore executed his complaint in this civil action. At the time, officials had not replaced Moore's stolen brace. Moore alleges that the failure to replace the brace caused him "constant pain and suffering" (Dkt. 1, at 4). *See* Dkt. 30, at 5 (claiming he suffered in August 2021 from severe burning pain at the base of his neck, numbness and tingling in his arms and hands, and unstable legs, and that his symptoms had begun on February 26, 2020). He recounts multiple attempts to get a new brace in

the weeks before he filed his complaint. On July 22, 2021, Moore saw Brian Oliver, M.D., at the University of Texas Medical Branch (UTMB), who is not a defendant in this action. Dr. Oliver told Moore that TDCJ, rather than UTMB, needed to supply Moore with a new brace (Dkt. 1, at 4). On July 26, 2021, Moore requested a brace from Chan and other providers at the Estelle Unit, who told him that they would look into his request (Dkt. 30, at 3). On July 27, 2021, Moore sent a letter to Linthicum, the director of health services for TDCJ, complaining of risks to his health and safety (*id*. at 14-15). On August 4 and 15, 2021, Moore sent letters to Dale Wainwright and Patrick O'Daniel, officials with the Texas Board of Criminal Justice, complaining of his medical problems (*id*. at 12-13).

In his more definite statement, in response to the Court's questions about neck braces, Moore acknowledged that he had been issued several other neck braces in the relevant period. In particular, he was issued a "soft collar" brace on an unspecified date that "is not designed to give proper support for [his] neck condition" (*id*. at 2). He also received a "temporary collar" on June 12, 2021, that was "one size to[o] small and "does not meet [his] long term permanent use needs" (*id*.). He states that the braces he received were not the hard collar brace he requested.

On September 3, 2021, Moore had surgery that apparently was related to his injuries from the bus accident (*id*. at 4-5). Several days later, on September 6, 2021, Dr. Oliver at UTMB provided him with a replacement brace (*id*. at 2). Moore claims that this brace also was inadequate because it is "not designed for long term or time use such as permanently" (*id*.).

In order to assess Moore's allegations of imminent danger at the time he filed his complaint in early August, the Court asked him whether any Defendants had denied his medical requests from May 1, 2021, through August 4, 2021. Moore responded that Chan and other providers at the Estelle Unit placed him in danger when they told him they would order him a hard collar rather than sending him "across the street" to a regional medical facility, or to Huntsville General Hospital, where he might have received a hard collar immediately (*id*. at 3). *See id*. at 6 (alleging that Chan "should not have to order the collar" and that Estelle Unit officials' refusal to send him to a different facility with an available stock of hard collars was a denial of a serious medical need). He alleged that Chan had reviewed Moore's MRI in January 2021 and made several unsuccessful attempts to obtain a new neck brace for him, and therefore was aware of a serious medical need "way before August 2021" (*id*. at 10). He stated that Nwankwo, also a medical provider, never personally examined him but should have known that he was in medical danger (*id*. at 11-12). He also complained that Richardson and Burson, wardens at the Estelle Unit, were aware of his need for a new neck brace but did not provide it (*id*. at 15-18). Finally, Moore stated that he sent letters to three Defendants with supervisory responsibilities: Murray, the president of UTMB; Lumpkin, director of TDCJ; and Linthicum, health services director for TDCJ. He alleged that these supervisory officials were deliberately indifferent to his serious medical need because they received his letters and had access to his full medical records, which demonstrated the medical risk Moore faced, but failed to adequately respond (*id*. at 9-10, 12-15).

On November 12, 2021, less than a week after filing his more definite statement, Moore filed a proposed amended complaint (Dkt. 20), which seeks to add two additional

plaintiffs to his suit but essentially brings the same claims regarding Moore's medical care.

## II. LEGAL STANDARDS

### A. 28 U.S.C. § 1915(g)

Under the "three strikes" rule found in the Prison Litigation Reform Act (PLRA), a prisoner is not allowed to bring a civil action *in forma pauperis* in federal court if, while incarcerated, three or more of his civil actions or appeals were dismissed as frivolous, malicious or for failure to state a claim upon which relief may be granted, unless he is under "imminent danger of serious physical injury." 28 U.S.C. § 1915(g). Once a prisoner has accumulated three qualifying dismissals or strikes for purposes of § 1915(g), he may not proceed without prepayment of the filing fee unless he fits within the imminent-danger exception at the time his complaint is filed. *See Brown v. Megg*, 857 F.3d 287, 290 (5th Cir. 2017); *Banos v. O'Guin*, 144 F.3d 883, 885 (5th Cir. 1998). The threat of imminent danger must be "real and proximate" and allegations regarding past harms do not suffice. *Ciarpaglini v. Saini*, 352 F.3d 328, 330 (7th Cir. 2003); *see Abdul-Akbar v. McKelvie*, 239 F.3d 307, 315 (3d Cir. 2001) (en banc).

### B. The PLRA and *Pro Se* Pleadings

Because the plaintiff is an inmate seeking redress from government officials, the Court is required by the PLRA to scrutinize the claims and dismiss the complaint at any time, in whole or in part, if it determines that the complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see* 28 U.S.C. § 1915(e)(2)(B); 42 U.S.C. § 1997e(c). A claim is frivolous if it lacks any arguable basis

in law or fact. *Samford v. Dretke*, 562 F.3d 674, 678 (5th Cir. 2009). "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory." *Rogers v. Boatright*, 709 F.3d 403, 407 (5th Cir. 2013) (internal quotation marks and citation omitted). "A complaint lacks an arguable basis in fact if, after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Id.* (internal quotation marks and citation omitted).

In reviewing the pleadings, the Court is mindful of the fact that the plaintiff proceeds *pro se*. Complaints filed by *pro se* litigants are entitled to a liberal construction and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted). Even under this lenient standard a *pro se* plaintiff must allege more than "'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). Regardless of how well-pleaded the factual allegations may be, they must demonstrate that the plaintiff is entitled to relief under a valid legal theory. *See Neitzke v. Williams,* 490 U.S. 319, 327 (1989); *McCormick v. Stalder,* 105 F.3d 1059, 1061 (5th Cir. 1997).

### III. ANALYSIS

#### A. Imminent Danger

Moore has filed numerous previous lawsuits, including at least three civil actions that have been dismissed as frivolous or for failure to state a claim upon which relief can

be granted. *See Moore v. Collier,* Civil Action No. 4:20-2048 (S.D. Tex. June 16, 2020); *Moore v. Herrera*, Civil Action No. 4:19-2052 (S.D. Tex. June 25, 2019); *Moore v. Herrera*, Civil Action No. 4:19-2053 (S.D. Tex. June 13, 2019).[1] He therefore may not proceed *in forma pauperis* absent a showing that he is under imminent danger of serious physical injury. 28 U.S.C. § 1915(g); *Banos*, 144 F.3d at 885. The Court must carefully examine Moore's specific factual allegations to determine whether they meet § 1915(g)'s standards. *See Iqbal*, 556 U.S. at 678; *Camp v. Putnam*, 807 F. App'x 303, 306 (5th Cir. 2020).

Moore's complaint alleges that Defendants were deliberately indifferent to his serious medical need because they failed to replace his neck brace (Dkt. 1, at 4). He alleges that, when he filed the complaint in early August 2021, he suffered from severe burning pain at the base of his neck, numbness and tingling in his arms and hands, and unstable legs (Dkt. 30, at 5). As noted above, Moore acknowledges that medical personnel issued him two braces during the period before he filed this suit (*id*. at 2). He states that he received one new brace on June 12, 2021, approximately six weeks before he filed his complaint, although it was not the hard collar he had requested and was the wrong size (*id*.). He also states that, in late July, medical providers at the Estelle Unit told Moore they would look into his requests for a new brace (*id*. at 3). On September 3, 2021, he had surgery for his neck injuries. On September 6, 2021, three days after Moore's surgery and approximately one month after he filed his complaint, Dr. Oliver

---

[1] Additionally, the Court notes that Moore has filed at least two previous actions in 2021 raising claims regarding adequate medical care, both of which were dismissed under 28 U.S.C. § 1915(g) because Moore failed to show that he was under imminent danger of serious physical injury. *See Moore v. Lumpkin*, Civil Action No. 4:21-0557 (S.D. Tex. Apr. 2, 2021); *Moore v. Lumpkin*, Civil Action No. 4:21-1364 (S.D. Tex. Apr. 29, 2021).

issued him a new brace (*id*. at 2).

The question before the Court is whether Moore was in imminent danger of serious physical injury at the time of his complaint in August 2021. Given that Moore's complaint is based on officials' alleged failure to replace his stolen neck brace, his receipt of a replacement brace six weeks before he filed his complaint weighs against a finding of imminent danger. The type of medical equipment that prison officials issue is not dependent merely on an inmate's request, but also on the medical judgment of the providers. *See Brauner v. Coody*, 793 F.3d 493, 499-500 (5th Cir. 2015). In any event, even if Moore could establish that the brace he received in June 2021 (or the other braces he received) was the wrong type or size, he does not sufficiently allege that his symptoms in early August 2021 were attributable to having an improper brace. Rather, when asked directly by the Court about the cause of his symptoms in August 2021, Moore attributed the symptoms to having "no brace," without acknowledging the other braces officials had issued him (Dkt. 30, at 6).[2] Additionally, Moore claims that his pain in August 2021 was attributable not only to not having a hard brace but to the bus accident in February 2020 (*id*. at 6-7), and that his symptoms began on the night of the accident (*id*. at 5). Under Fifth Circuit authority, his allegations of pain from prior injuries are insufficient to meet § 1915(g)'s standards.[3]

---

[2] Moore also claimed in his more definite statement, when answering a question regarding his symptoms in early August 2021, that he complained to Chan about having the "wrong collar" (*id*. at 5-6). However, he stated that his complaint to Chan was dated May 24, 2021 (*id*. at 6). Because Moore received a new brace in June 2021, his allegation about his May complaint to Chan is of limited relevance when assessing his imminent danger in August 2021.

[3] *See White v. Duff*, 812 F. App'x 268, 269 (5th Cir. 2020) (plaintiff who alleged that he had been injured 18 months before filing his complaint and that "he may suffer harm if he undergoes surgery to correct the injury" had not shown that he was in imminent danger of

Moore's allegations in his complaint and more definite statement are insufficient to show imminent danger for purposes of § 1915(g). *See Brown*, 857 F.3d at 290; *Ciarpaglini*, 352 F.3d at 330 (conclusory claims of imminent danger do not satisfy § 1915(g)). Because he is not otherwise eligible to proceed *in forma pauperis*, the court will dismiss the complaint without prejudice as barred by § 1915(g).

### B.  Eighth Amendment

As an additional ground supporting dismissal, the Court notes that, even if Moore were granted leave to proceed *in forma pauperis* under the imminent-danger exception, his complaint would be subject to dismissal under 28 U.S.C. § 1915A because he fails to state a claim under the Eighth Amendment on which relief can be granted. *See Camp*, 807 F. App'x at 305-06 (considering both imminent danger of serious physical injury and the plausibility of the plaintiff's Eighth Amendment claims); *Sawyer v. Die*, 689 F. App'x 814 (5th Cir. 2017) (same).

Moore alleges that Defendants denied him adequate medical attention for his neck and, in particular, did not supply him with a hard collar brace. He brings his claim under 42 U.S.C. § 1983, which provides a vehicle for a claim against a person "acting under

---

serious physical injury); *Mundine v. Gustafson*, 669 F. App'x 247, 247-48 (5th Cir. 2016) (plaintiff who alleged that "he was required to perform manual labor in violation of medical restrictions, and, as a result, he suffered severe pain, and his pre-existing back injury worsened," but also acknowledged receiving medical treatment and restrictions, had not established imminent danger of serious physical injury); *McCoy v. Murray*, 600 F. App'x 250, 251 (5th Cir. 2015) (plaintiff who alleged that "he is in pain and has difficulty sleeping because of delays in receiving medication, and that there is a likelihood of unnecessary delay in receiving future medication from prison officials," had failed to demonstrate that he was under imminent danger of serious physical injury); *Arvie v. Tanner*, 518 F. App'x 304, 304–05 (5th Cir. 2013) (plaintiff who was receiving treatment for "a variety of chronic medical conditions" but alleged that "'necessary life-sustaining treatment' for his hepatitis [had been] denied" and that he would suffer "irreversible liver damage" without the treatment had not shown imminent danger of serious physical injury).

color of state law," such as a state prison official, for a constitutional violation. *See Pratt v. Harris Cty., Tex.*, 822 F.3d 174, 180 (5th Cir. 2016); *Townsend v. Moya*, 291 F.3d 859, 861 (5th Cir. 2002). Because Moore was, at all relevant times, a convicted felon in state prison, his claim regarding medical care is governed by the Eighth Amendment, which requires him to demonstrate that a defendant exhibited "deliberate indifference" to his "serious medical needs, constituting an unnecessary and wanton infliction of pain." *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (cleaned up); *see Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

The Eighth Amendment standard has both an objective and subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Cleveland v. Bell*, 938 F.3d 672, 676 (5th Cir. 2019); *Gobert v. Caldwell*, 463 F.3d 339, 345-46 (5th Cir. 2006). A plaintiff must show that the defendant was aware of facts from which the inference could be drawn of a substantial risk of serious harm; that the defendant subjectively drew the inference that the risk existed; and that the defendant disregarded the risk. *Cleveland*, 938 F.3d at 676. Deliberate indifference is an "extremely high standard." *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001). It requires "more than an allegation of mere negligence, but less than an allegation of purpose or knowledge." *Hinojosa v. Livingston*, 807 F.3d 657, 665 (5th Cir. 2015). A significant risk that the official "should have perceived but did not" is insufficient for a constitutional violation. *Cleveland*, 938 F.3d at 676. A delay in medical care can constitute a constitutional violation "only if there has been deliberate indifference that results in substantial harm." *Easter*, 467 F.3d at 463 (cleaned up).

In this case, Moore alleges that Chan, the only Defendant directly involved in his medical care, reviewed Moore's MRI results on January 6, 2021, made several unsuccessful attempts to get Moore a different neck brace, and then "left the unit" without following up on the progress of the replacement brace (Dkt. 30, at 10-11). He also alleges that Assistant Warden Burson was aware of his neck problems beginning in April 2021 but never sent him to another facility where he might have immediately received a hard brace (*id*. at 16-18). However, his pleadings acknowledge that he was receiving regular medical attention for his neck during the relevant time period, including a new neck brace received on June 12, 2021, and surgery on September 3, 2021 (*id*. at 2-6). The Fifth Circuit has held that deliberate indifference is not shown when "medical records indicate that the plaintiff was afforded extensive medical care by prison officials," even when the plaintiff alleges that doctors "refus[ed] to accommodate his requests in the manner he desired." *Brauner*, 793 F.3d at 500 (cleaned up); *see McCord v. Maggio*, 910 F.2d 1248, 1251 (5th Cir. 1990). In light of the regular medical care Moore was receiving, his allegations that Defendants failed to issue him a hard brace quickly enough, or to send him to another facility to get a hard brace, are insufficient to show that any Defendant refused to treat Moore, ignored his complaints, intentionally treated him incorrectly, or otherwise evinced a wanton disregard for his serious medical need. *See Gobert*, 463 F.3d at 346. He therefore fails to adequately plead that any Defendant was deliberately indifferent under the Eighth Amendment. Even assuming Moore could successfully state a claim for negligence or medical malpractice, such a claim would not suffice under the deliberate indifference standard. *See Hinojosa*, 807 F.3d at 665.

Moore's claims against Nwankwo, Murray, Lumpkin, and Linthicum additionally fail because he does not plead that these Defendants were personally involved in the alleged denial of medical care. *See Delaughter v. Woodard*, 909 F.3d 130, 136-37 (5th Cir. 2018) (a defendant's personal involvement is an essential element of a civil-rights cause of action, meaning that there must be an affirmative link between the injury and a defendant's conduct). Moore states that Nwankwo was a medical provider at the "main building" that was "across the street" from his unit, but that he never actually saw her for medical treatment (Dkt. 30, at 11-12). He states that he wrote letters to multiple Defendants asking for help with his medical problems, including letters to Murray, president of Hospital Galveston, in June or July 2021 (*id*. at 9-10); letters to certain colleagues of Bobby Lumpkin, director of TDCJ, in August 2021 (*id*. at 12-14); and letters to Linthicum, health services director for TDCJ, in July 2021 (*id*. at 14-15). To the extent Moore alleges that Defendants with supervisory roles were deliberately indifferent for failing to adequately act based on his letters, his claims fail under both § 1983 and the deliberate-indifference standard. *See Delaughter*, 909 F.3d at 136-37; *Westfall v. Luna*, 903 F.3d 534, 552 (5th Cir. 2018); *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011).

For all of the reasons stated above, Moore fails to adequately plead an Eighth Amendment claim against any Defendant. His proposed amended complaint, which seeks to add two additional plaintiffs but brings essentially the same claims and appears to complain about the same Defendants, also fails to state a claim on which relief can be granted for the reasons set forth above. Therefore, all of Moore's claims are subject to dismissal under 28 U.S.C. § 1915A(b).

## IV. CONCLUSION

For the reasons stated above, the Court now **ORDERS** as follows:

1. Moore's motion for leave to proceed *in forma pauperis* (Dkt. 10) is **DENIED.** This case is **DISMISSED without prejudice** under 28 U.S.C. § 1915(g).

2. As an additional ground, Moore's claims are dismissed under 28 U.S.C. § 1915A for failure to state a claim upon which relief may be granted.

3. All pending motions are **DENIED as moot**.

The Clerk will provide a copy of this order to the plaintiff.

SIGNED at Houston, Texas, this 3rd day of January, 2022.

_____
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE